ESTATE OF MAXINE RIGER, PEGGY ANN LUCKMAN, ADMINISTRATRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Riger v. Commissioner
Docket No. 17441-80.
United States Tax Court
T.C. Memo 1983-669; 1983 Tax Ct. Memo LEXIS 119; 47 T.C.M. (CCH) 250; T.C.M. (RIA) 83669; November 7, 1983. William B. Acker, for the petitioner. Carlson Howard, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: The motions to dismiss for lack of jurisdiction in this case were assigned to Special Trial Judge Francis J. Cantrel for hearing, and were subsequently reassigned to Special Trial Judge Fred R. Tansill for consideration and ruling thereon. The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. [1]
OPINION *121 OF THE SPECIAL TRIAL JUDGE TANSILL, Special Trial Judge: This case is before the Court on respondent's motion to dismiss for lack of jurisdiction due to petitioner's failure to file a petition with the Court within the prescribed statutory period after the mailing of the staturoty notice of deficiency (hereinafter the notice), and petitioner's cross-motion to dismiss due to respondent's failure to mail a valid notice. Petitioner argues that respondent failed to mail the notice to the decedent's "last known address" pursuant to section 6212(b)(1); [2] alternatively petitioner argues that respondent is unable to prove that the notice was actually mailed, or sent by registered or certified mail. Peggy Ann Luckman, a resident of Skokie, Illinois, is the duly qualified administratrix of the estate of Maxine Riger, who died on January 6, 1978.Respondent determined a deficiency in Federal income tax in the amount of $34,104.89 for 1973 for Maxine Riger and her husband, Cymon Riger, who died on October 21, 1976. The Rigers filed a joint Federal *122 income tax return for 1973. The notice, dated February 24, 1977, was mailed [3] that date to the following address (the Switzerland address): Mr. Cymon Riger and Mrs. Maxine Riger VIA Baraggie IV 6612 Asconia, Switzerland
It was returned, unopened, to the Office of the District Director, Baltimore, Maryland. Based on the facts as developed in the record, petitioner first became aware of this action when assessment notices were mailed to Peggy Ann Luckman in her capacity as administratrix of Maxine Riger's estate. The petition, which contests the entire deficiency, was filed on September 15, 1980. Respondent moved to dismiss for lack of jurisdiction because the petition was filed more than 150 days after the notice was mailed to Switzerland pursuant to section 6213(a), [4] and petitioner filed a cross-motion for dismissal alleging that respondent failed to provide a valid notice as required by section 6212(a) and (b)(1), [5] before the 3-year period of limitations provided for in section 6501(a) had expired. [6] Accordingly, if respondent issued a valid notice, the petition will have to be dismissed for lack of jurisdiction. However, if jurisdiction is lacking for respondent's *123 failure to issue a valid notice, we will dismiss the case on that ground, rather than for failure to file a timely petition. Keeton v. Commissioner,74 T.C. 377, 379 (1980). *124 The determinative facts of this case center upon the Rigers' "last known address" on February 24, 1977, and the efforts of respondent's agent to ascertain the address to which a notice should have been mailed. The Rigers' 1973 tax return was filed with the Chicago, Illinois, District Director's Office, showing a Chicago law firm in the taxpayers' address block. When the return was examined, respondent's agent contacted the law firm, Harris, Berman and Silets, a member of which informed him that the taxpayers had moved to Bethesda, Maryland, had taken their books and records with them, and were no longer represented by the firm. The examination was transferred to the Baltimore, Maryland, District Director's Office. Mr. Riger was contacted at his residence in Bethesda, an apartment located at 5225 Pooks Hill Road (the Maryland address) in April 1976. He referred Revenue Agent Richard Ames (Ames) [7] to his representative, Mr. Wakenight (Wakenight). In May 1976, Wakenight informed Ames that an attorney, Mr. Strupp (Strupp), would represent the Rigers. Ames communicated several times with Strupp, Wakenight, and Mr. Riger through June 1976 without concluding the investigation. *125 In June 1976, an attorney, Mr. McNelis, advised Ames that he would be representing the Rigers. Communications continued through September without reaching agreement or settlement, and then Mr. McNelis withdrew from the case. Ames telephoned the Rigers numerous times at their Maryland address throughout September 1976 without reaching them. Three written communications were sent to them at that address: a request for an interview (Form MAR 5591) dated 9/29/76; a request that the taxpayers sign a consent (Form 872) to extend the statutory period of limitations dated 10/13/76; and a letter dated 1/3/77 (Form L-119) requesting that the taxpayers take some action regarding the previously mailed consent form.[8] Further, several internal memoranda of the Internal Revenue Service regarding this investigation show that the Rigers' residence *126 was considered to be the Maryland address. Ames received no response from any of these inquiries until January 12, 1977. On that date he received a telephone call from Wakenight who advised Ames that he had been receiving the Rigers' mail since they had gone on vacation to Switzerland in October 1976, and he was calling in response to respondent's correspondence. He stated further that Mr. Riger had died in Switzerland, and that Mrs. Riger had stayed in Switzerland. A report of death from the United States Department of State confirmed this information to Ames. The report listed Mr. Riger's last known domestic address as the Maryland address; it also indicated that a copy of the report was mailed to Mrs. Riger at the Switzerland address. Ames also received a copy of the Swiss death certificate of Mr. Riger which listed the Rigers' address as the Maryland address and the place of death as the Switzerland address. An extract from the Swiss death register lists the Maryland address as the "last residence of the deceased." Speaking with relatives of the Rigers, Ames confirmed *127 the death of Mr. Riger and the fact that Mrs. Riger had stayed in Switzerland despite the return of her husband's body for burial. The agent also contacted the manager of the apartment at the Maryland address. She advised that, when the Rigers left, she thought they were going on a vacation to the midwest. However, when their furniture and automobile were subsequently removed, she knew that they had permanently departed. Respondent had never been advised by the Rigers or their representatives that the Switzerland address was where they wanted any correspondence to them to be mailed. Respondent never received correspondence from them, nor mailed any to them at that address other than the notice itself. [9]
Based on the foregoing information, respondent's agent decided that the Rigers' "last known address" was the Switzerland address. The envelope said to contain the notice was mailed to that address. Neither the original notice nor the Post Office Form 3877, evidencing the Post Office's receipt and transmittal of the notice when sent by certified or registered mail was introduced into *128 evidence. The evidence also shows that a new tenant had leased the Pooks Hill Road, Bethesda, Maryland, address as of October 1, 1976, and that the Rigers had submitted a mail-forwarding card (Form 4759) to the Post Office indicating an address in Fox Lake, Illinois, as their "New Address" as of December 29, 1976. However, respondent's agent was unaware of these facts when the notice of deficiency was mailed. When respondent determines that a deficiency exists he must so advise the taxpayer by appropriate notice thereof within the applicable period of limitations. Such notice is sufficient if it is mailed by certified or registered mail to the "last known address" of the taxpayer. Section 6212(a) and (b)(1). In order for the taxpayer to litigate in this Court, the taxpayer must file a petition for redetermination within 90 days or 150 days if the notice is addressed to a person outside of the United States, after the date of the proper mailing of such notice. Sec. 6213(a). Failure so to file will result in dismissal of the case because a timely petition is a jurisdictional prerequisite of this Court. Minuto v. Commissioner,66 T.C. 616 (1976). However, if *129 the notice was not properly mailed, the 90-day or 150-day period for filing a Tax Court petition does not commence, and respondent usually may not assess and collect any deficiency. Sec. 6213(a). Neither section 6212(b)(1) nor the regulations promulgated thereunder define "last known address." As established by precedent, a taxpayer's "last known address" is "that address where the Secretary (or his delegate) reasonably believed the taxpayer wished notice to be sent." Delman v. Commissioner,384 F.2d 929, 932 (3d Cir. 1967), affg. an order of this Court. See also Looper v. Commissioner,73 T.C. 690, 696 (1980); Lifter v. Commissioner,59 T.C. 818, 821 (1973). It is the person's "last permanent address of a definite duration to which the taxpayer has directed the Commissioner to send all communications." McPartlin v. Commissioner,653 F.2d 1185, 1189 (7th Cir. 1981), revg. and remanding an order of this Court, (citing Alta Sierra Vista, Inc. v. Commissioner,62 T.C. 367, 374 (1974), affd. 538 F.2d 334 (9th Cir. 1976), which actually stated, "the taxpayer's last permanent address *130 or legal residence known by the Commissioner or the last known temporary address of a definite duration" (emphasis added)).See also Budlong v. Commissioner,58 T.C. 850, 852 (1972); McCormick v. Commissioner,55 T.C. 138, 141 (1970). Most cases concerning a taxpayer's "last known address" involve the mailing of the notice to an address from which the taxpayer has moved. The question, thus, is whether it was "reasonable" for respondent to have mailed the notice to the old address rather than to a new address. This Court has decided that, absent notification from the taxpayer designating a new address, respondent has acted reasonably if he mails the notice either to the prior "known" address, or the address shown on the tax return. Alta Sierra Vista, Inc.,supra at 374. See Timmons v. Commissioner,T.C. Memo. 1978-262, affd. 605 F.2d 1206 (4th Cir. 1979). However, respondent must use reasonable care and diligence in determining the actual address of the taxpayer, Keeton v. Commissioner,supra at 382, and failure to do so has resulted in a finding that the notice is invalid *131 even when mailed to the address on the return or a previously authorized address. Crum v. Commissioner,635 F.2d 895 (D.C. Cir. 1980), revg. an order of this Court; Foley v. Commissioner,T.C. Memo. 1983-3. Turning to the instant situation in which the notice was sent to an address more recent than the established address of the taxpayer, these same principles are applicable. While a taxpayer acts at his peril by changing addresses without informing respondent of the change, Budlong,supra;McCormick,supra, the fact that a taxpayer has not advised respondent to contact him at a "new" address is an indication that such address is only temporary and he does not wish to have mail sent there. Looper v. Commissioner,supra at 697; see Timmons v. Commissioner,supra.
In the instant case, respondent's agent learned before the notice was mailed that the Rigers were on vacation "in the midwest" or "in Switzerland" and that Mr. Riger had died while in Switzerland. Despite these facts, nothing before us indicates that respondent had reason to consider the address in Switzerland *132 as anything other than temporary.While Mrs. Riger reportedly "stayed on in Switzerland" after her husband's body was transported for domestic burial, a fact certainly of some note, nothing suggests that she remained at the same address. In particular, the State Department report, the Swiss death certificate, and the extract from the Swiss death register list the Maryland address as the Rigers' "last known address in the United States," "domicile," and "last residence of the deceased," respectively. None of these documents implied that the Switzerland address, or any other address in that country, would be permanent or of significant duration. In Looper v. Commissioner,supra at 697, this Court held that a college address was temporary in nature and, absent notification from the taxpayer that he wanted correspondence sent there, did not constitute his "last known address." It appears to us that the Rigers' residence at the Switzerland address was merely a vacation address, thus similarly temporary. Respondent never "knew" that Mrs. Riger actually resided there, and the temporary nature of the address made it less likely that the notice would actually be received. *133 Respondent argues, however, that he was placed in a dilemma: the Rigers had apparently departed from the Maryland address permanently, and the Switzerland address was the only other one of which he was aware. Was it, then, "reasonable" for the notice to be sent to Switzerland? We think not under the particular circumstances involved herein. Where a taxpayer moves and does not notify respondent of his new address, the address on the return will suffice as the "last known address" (absent actual knowledge by respondent of the new address). Alta Sierra Vista, Inc. v. Commissioner,supra at 374. The record does not indicate that the Rigers filed any tax returns indicating the Maryland address as their residence, but it is clear that the Maryland address was the "known address" to respondent's agent. The agent never "knew" that the Rigers resided at the Switzerland address and, as we have stated, they never indicated a desire to be contacted there. Further, a change of address form had been filed by the Rigers at the Post Office. In Luhring v. Glotzbach,304 F.2d 556 (4th Cir. 1962), the Fourth Circuit held that, where respondent learned *134 of the taxpayers' new address by contacting the Post Office and mailed the notice accordingly, such notice was valid despite the taxpayer's subsequent move. Under the circumstances herein, an inquiry to the Post Office would have revealed the Fox Hill, Illinois, address, and we believe it would have been reasonable for respondent to have mailed the notice to that address. Significantly, the change of address form did not indicate an address in Switzerland. This further supports our conclusion that the Rigers were in Switzerland only temporarily and did not want official correspondence sent to them there. Petitioner argues that respondent failed to follow his own manual in that he did not send duplicate original notices to each potential "last known address." [10] While such action would have been prudent and unquestionably would have resulted in a valid notice, we do not find that a failure to do so, perse, is unreasonable. Certainly, had the notice been sent to an address which we could find did constitute the "last known address," such notice would not be invalidated for failure to send it to other possible addresses. *135 Nonetheless, we are compelled to find that the Switzerland address was, at best, a temporary vacation address. Further, we find that this fact was or should have been apparent to respondent's agent because he was advised that the Rigers were "on vacation"; no notification was given to respondent or anyone else to use that address; the documents relied upon listed the Maryland address as the "last known address in the United States," "domicile," or "last residence of the deceased," and communications to the Maryland address did draw a response, admittedly delayed, from a representative or former representative of the Rigers with whom Ames was familiar. Thus, it was not reasonable to select the Switzerland address for the mailing of the notice. In reaching this decision, we do not deny that the agent diligently sought out the Rigers after a lengthy unsuccessful attempt to discuss the case with them or their representative.Despite this effort, however, the decision to mail the notice only to an address which should have appeared to be merely temporary was not "reasonable." Because we have reached this result it is unnecessary to consider petitioner's alternative position that the *136 evidence is insufficient to prove that the notice was actually mailed by certified or registered mail. Petitioner's motion to dismiss will be granted and respondent's motion to dismiss will be denied. To reflect the foregoing, An appropriate order and decision will be entered.
Footnotes
1. Since this is a jurisdictional motion, the Court has concluded that the post-trial procedures of Rule 182, Tax Court Rules of Practice and Procedure↩, are not applicable. This conclusion is based upon the authority of the "otherwise provided" language of that rule. The parties were heard on oral argument.
2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
3. We do not here address the issue, argued in the alternative by petitioner, of whether the notice was actually in the envelope mailed to this address. ↩
4. SEC. 6213. RESTRICTIONS APPLICABLE TO DEFICIENCIES; PETITION TO TAX COURT. (a) Time for Filing Petition and Restriction on Assessment.--Within 90 days, or 150 days if the notice is addressed to a person outside the United States, after the notice of deficiency authorized in section 6212 is mailed (not counting Saturday, Sunday, or a legal holiday in the District of Columbia as the last day), the taxpayer may file a petition with the Tax Court for a redetermination of the deficiency. Except as otherwise provided in section 6861 no assessment of a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, or 44 and no levey or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 90-day or 150-day period, as the case may be, nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final. Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court. ↩
5. SEC. 6212. NOTICE OF DEFICIENCY. (a) In General.--If the Secretary determines that there is a deficiency in respect of any tax imposed by subtitle A or B or chapter 41, 42, 43, 44, or 45, he is authorized to send notice of such deficiency to the taxpayer by certified mail or registered mail. (b) Address for Notice of Deficiency.-- (1) Income and gift taxes and certain excise taxes.--In the absence of notice to the Secretary under section 6903 of the existence of a fiduciary relationship, notice of a deficiency in respect of a tax imposed by subtitle A, chapter 12, chapter 42, chapter 43, chapter 44, or chapter 45, if mailed to the taxpayer at his last known address, shall be sufficient for purposes of subtitle A, chapter 12 chapter 42, chapter 43, chapter 44, chapter 45, and this chapter even if such taxpayer is deceased, or is under a legal disability, or, in the case of a corporation, has terminated its existence. ↩
6. In some circumstances the 3-year period of limitations on assessment is extended or suspended altogether, but respondent has not alleged that any period of limitations other than the general one of 3 years applies in the present case.↩
7. Although Revenue Agent Ames did not testify, his notes were admitted into evidence as a joint exhibit. Many of the facts upon which this opinion is based are gleaned from this exhibit. Mr. and Mrs. Riger both had died prior to the hearing; oral testimony was taken only from the assistant manager of the apartment in Bethesda where they had resided.↩
8. The Forms 872 and L-119 were addressed to "Pools Hill Road" rather than "Pooks Hill Road."↩
9. Assuming, arguendo,↩ that the notice was enclosed in the envelope so addressed.
10. Internal Revenue Manual VI, sec. 4464.12(3).↩